**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ANTHONY WAYNE CORPORATION, | ) | CAUSE NO. 3:13-CV-1406 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ELCO INDUSTRIES, INC., ELCO TEXTRON, | ) | |
| INC. F/K/A ELCO INDUSTRIES, | ) | |
| TINNERMAN PALNUT, INC., and | ) | |
| A. RAYMOND TINNERMAN | ) | |
| MANUFACTURING, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF ELCO'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

**I.      Introduction.**

Plaintiff's opposition to the motion to dismiss filed by Defendants Elco Industries, Inc. and Elco Textron, Inc. (collectively "Elco") fails to save its flawed Amended Complaint. To begin with, Plaintiff offers no argument that it has sufficiently pled claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") or Indiana's Environmental Legal Action ("ELA") Statute. Instead, it asserts that Elco is using a "heightened standard" of pleading. This is not so. The cases upon which Elco relies clearly demonstrate that Plaintiff's amended allegations do not satisfy notice pleading. In response to Elco's economic loss argument, Plaintiff likewise offers no substantive response but incorrectly leans on a recent Seventh Circuit decision that has no bearing here. And, finally, despite Plaintiff's attempts to muddy the factual waters, it remains clear that the assignment and novation between Elco and Tinnerman Palnut, Inc. ("Tinnerman")–acts taken with Plaintiff's express consent–absolve Elco of any liability for all the claims presently asserted against. As discussed below, the Court should dismiss Plaintiff's claims against Elco.

II.    **Argument.**

A.    **Plaintiff concedes that it does not have a cause of action under Section 113 of CERCLA.**

In its opening brief, Elco argued that Plaintiff does not have a cause of action under CERCLA § 113(f)(1) because it has not been sued under either CERCLA §§ 106 or 107. [DE 34 at 22-23.]  Without any substantive discussion, Plaintiff responds in six short lines conceding that Elco's argument "may be true." [DE 35 at 12.] Its concession aside, Plaintiff's failure to address the argument is fatal to this claim because a party is deemed to have waived opposition to an argument when it fails to substantively respond to it.  *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (internal citations omitted); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument...results in waiver.").  Thus, Plaintiff's Section 113(f)(1) claim should be dismissed.

B.    **Plaintiff has inadequately pled its claim under CERCLA § 107.**

Elco moved to dismiss Plaintiff's Section 107 claim based on its failure to sufficiently plead the claim's essential elements, e.g., that the site is a "facility"; that there has been a "release" or the "threat of a release" of a "hazardous substance"; or that it has incurred costs responding to this release. [DE 34 at 17-9.] Again, Plaintiff does not explain its failure to plead these essential elements.  [DE 35 at 9-12.] Instead, it incorrectly argues that Elco is relying on a "heightened pleading standard" that the Supreme Court has rejected. [*Id.* at 10.] However, Elco did not apply a "heightened pleading standard," but rather cited to cases which clearly establish how Section 107 claims are to be pled to comply with the federal notice pleading standard.

To be clear, a Section 107 claim requires a plaintiff to establish four prima facie elements: (1) that the site in question is a "facility"; (2) that the defendant is a "responsible party"; (3) that the release or threatened release of a hazardous substance occurred; and (4) that

2

the plaintiff incurred necessary response costs as a result of the release that are consistent with federal regulations referred to as the National Contingency Plan. *Em. Servs. Billing Corp., Inc. v. Allstate Ins. Co.*, 2010 WL 1088305, at \*3 (N.D. Ind. Mar. 19, 2010) (citing *Envtl. Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992)). In each case Elco cited in its opening brief, the court dismissed a Section 107 claim under Rule 12(b)(6) for failing to allege facts sufficient to establish these elements.

For instance, in *Barnes Landfill, Inc. v. Town of Highland*, 802 F. Supp. 1087 (S.D.N.Y. 1992), the court dismissed as "vague" a CERCLA claim that failed to allege facts sufficient to put the defendants on notice of the hazardous substances which had been released and of the response costs it had incurred responding to this release. *Id.* at 1088-89. Plaintiff makes no attempt to distinguish *Barnes*, but instead argues that another case from the same district issued a year later, *Warwick Admin. Grp. v. Avon Prods., Inc.*, 820 F. Supp. 116 (1993), expressly rejected *Barnes*. (DE 35 at 10.) This is a gross misrepresentation of the *Warwick* decision.

In *Warwick*, the parties directly disputed "the standard to be applied by a district court upon a rule 12(b)(6) motion to dismiss." *Warwick Admin. Grp.*, at 120. The plaintiffs invoked Rule 8(a)'s "short and plain statement" standard, while the defendants argued that "CERCLA litigation requires a higher level of specificity in pleadings." *Id.* In doing so, the defendants cited to a Sixth Circuit and four district court decisions, including *Barnes*. *Id.* The *Warwick* court rejected the argument for a "heightened standard," but did so with no discussion of *Barnes*. *Id.* at 121. Instead, the court simply lists *Barnes* as a case defendants cited, without examination, and then discussed a 1991 Massachusetts district court decision. In that decision, *Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892, the court predicted that higher courts would extend "specificity of pleading requirements [found in Rule 9(b)] to CERCLA cases" and dismissed the plaintiff's

CERCLA claim for lack of specificity stating "[u]nless and until guidance to the contrary appears in legislation or precedent, I will so rule." 768 F.Supp. at 900. In *Warwick*, the court correctly noted that the *Cash* court's prediction proved incorrect and held that "a heightened pleading standard does not apply to CERCLA cases." *Warwick Admin. Grp.*, 820 F.Supp. at 121.

Plaintiffs here have latched onto this language and attempted to couch Elco's motion as requiring a "heightened pleading standard." [DE 35 at 10.] However, its argument both misrepresents Elco's motion and ignores the substantive legal discussion in *Warwick*. Indeed, in *Warwick*, after the court rejected a "heightened pleading standard" for CERCLA claims generally, it nonetheless dismissed the plaintiffs' Section 107 claim using a notice pleading standard. In doing so, the court explained the deficiency in the plaintiff's CERLCA claim:

> Reading the complaint literally, plaintiffs have alleged no more than the fact that moving defendants arranged for the treatment or disposal of solid waste and that studies have shown that solid waste contains hazardous substances. Plaintiffs do not state to which studies they refer to, nor do they state the source from which the solid waste studied came. Absent some allegation that the defendants' specific solid waste contained hazardous substances, plaintiffs have failed to allege that the defendants are liable parties under § 107(a)(3). Without a substantial tie between the studies and the solid waste generated by the individual defendants which would make plaintiff's allegation that defendants arranged for the transport or disposal of solid waste in essence an allegation that hazardous substances were transported or deposited, we cannot say that plaintiffs have stated a claim upon which relief can be granted.

*Id.* at 122. Therefore, even under the notice pleading standard, plaintiffs are required to plead, at the minimum, facts that support the prima facie elements of CERLCA. *Id.* at 121-22.

Next, Plaintiff argues that another case Elco cited, *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988), was also rejected by *Warwick*. [DE 35 at 10.] Here too, Plaintiffs have misread *Warwick*. Far from rejecting *McGregor* as a heightened pleading case, the *Warwick* court specifically noted that it was a case "not incompatible with a notice pleading

standard or fatally inconsistent with [the Supreme Court's holding in] *Leatherman*." *Warwick Admin. Grp.*, 820 F.Supp at 120. The court explained:

> In *McGregor*, the plaintiffs alleged that the United States, the State of Ohio and plaintiffs "have incurred and will continue to incur costs in connection with activities under CERCLA, including clean up, removal and remedial action." While plaintiffs listed expenditures by the state and federal government, they failed to list any costs they had personally incurred. Thus, the Sixth's Circuit's focus appears *not to have been on the fact that plaintiffs failed to plead with specificity* all the response costs it paid, but the fact that plaintiff only listed government expenditures which suggested that they had not personally borne any of the response costs, a necessary element for a claim under § 107.

*Id.* at 120-21 (internal citations omitted) (emphasis added). Thus, far from rejecting *McGregor*, the court affirmed that a Section 107 claim is insufficient where it fails to plead all of the prima facie elements of the claim, just as Elco has argued. Where plaintiffs fail to do so, a court is left "to presume facts that would turn plaintiffs' apparently frivolous claim under Section 107 of CERCLA into a substantial one." *McGregor*, 856 F.2d at 43. Thus, the *McGregor* decision, like *Warwick*, demonstrates Plaintiff's complaint is insufficient.

Fully committed to its "heightened standard" argument, Plaintiff next looks to *Eastman v. Brunswick Coal & Lumber Co.*, 1996 WL 911200, at *13 (D. Me. Apr. 19, 1996), and *Cook v. Rockwell International Corp.*, 755 F. Supp. 1468, 1475 (D. Colo. 1991), to further support the proposition that CERCLA does not require a heightened pleading standard. [DE 35 at 10-11.] However, once again, both *Eastman* and *Cook* support Elco's position. In *Eastman*, the plaintiff's CERCLA claim was dismissed because its allegation regarding the release of hazardous substances was vague and amounted to "merely a legal conclusion." 1996 WL 911200, at *13. Like the plaintiffs in *Eastman*, the Amended Complaint here is filled with vague, unsupported legal conclusions that lack factual support and, therefore, is insufficient. Likewise in *Cook*, the court held that plaintiffs' complaint must specify at least one cognizable response cost

incurred and explained that "[s]uch a requirement is consistent with the notice pleading requirement of the Federal Rules of Civil Procedure." 755 F. Supp. 1468, 1474-75. The court noted that "if plaintiffs have incurred cognizable response costs, it presents no undue burden to identify them in the complaint." *Id.* at 1475. This holds true in this case. There is no "heightened" burden placed on Plaintiff to identify whether or not it has incurred response costs.

What remains of Plaintiff's response to Elco's motion to dismiss its Section 107 claim amounts to misguided attempts to distinguish or otherwise criticize three cases Elco cites in its opening brief. [DE 35 at 11-2.] First off, Plaintiff criticizes Elco's citation to *Brewer v. Ravan*, 680 F. Supp. 1176 (M.D. Tenn. 1988). According to the Plaintiff, the *Brewer* court "refused" to dismiss the CERCLA claim despite the fact that the plaintiff there had failed to identify the hazardous substance that had been released. [DE 35 at 11.] Apparently, the *Brewer* court's "refusal" to dismiss in light of this shortcoming means that the Plaintiff's failure to identify the hazardous substances here should be of no consequence. However, Plaintiffs have again misread this case. In *Brewer*, plaintiffs brought claims under both CERCLA and RCRA. 680 F.Supp. at 1178. In support of its CERCLA claim, plaintiffs alleged that there had been a "release of PCBs and other hazardous substances." Based on these allegations, the court held that the "plaintiffs' claim for response costs under CERCLA should not be dismissed." However, the identification of hazardous substances was not an issue the court analyzed – most likely because the plaintiffs specifically alleged that PCBs were among the hazardous substances released. Stated differently, because the plaintiffs specified the hazardous substance at issue, it met its general notice burden and survived a motion to dismiss. On the other hand, the court dismissed the plaintiff's RCRA claim because it pled only that the defendants "have stored, disposed of, and open-dumped 'hazardous wastes' in violation of [RCRA]." *Id.* at 1182. However, unlike its CERCLA

allegations, the plaintiff failed to identify the hazardous waste at issue. *Id.* Because PCBs are not considered "hazardous wastes" under RCRA, that allegation could not be attributable to the plaintiffs' RCRA claim. Thus, *Brewer* clearly supports Elco's argument too.

Plaintiff then criticizes Elco's use of *Ford Motor Co. v. Michigan Consol. Gas Co.*, 2010 WL 3419502 (E.D. Mich. Aug. 27, 2010), stating that Elco "fails to note that the court later granted the defendant's Motion for Reconsideration and for Leave to Amend Counterclaim." [DE 35 at 11.] Here, Plaintiff hopes to show the Court that the Michigan district court changed its mind regarding the proper pleading of a CERCLA claim. However, Plaintiff's efforts are, once again, misplaced. In *Ford*, the court dismissed the defendant's CERCLA counterclaim holding that the counterclaim did not "allege 'enough factual matter (taken as true) to suggest that' the response costs were 'necessary.'" 2010 WL 3419502, at *7. The defendant chose to file a motion asking "for reconsideration of that dismissal, but only insofar as the order dismissed the [CERCLA count] 'with prejudice.'" *Ford Motor Co. v. Mich. Consol. Gas Co.*, 2011 WL 1743735, at *3 (E.D. Mich. May 5, 2011). In considering the motion, the court stated that "a more carefully pleaded counterclaim could cure the defects addressed in the court's August 26, 2010 order." *Id.* Ultimately, the court held that, with its amended counterclaim, the defendant had "responded to the court's concerns" and "included additional allegations in its pleadings addressing all of the deficiencies noted by the court." *Id.* at *5. Thus, contrary to Plaintiff's argument, the court did not abandon its prior holding that the defendant's original allegations in support of its CERCLA counterclaim were insufficient. Therefore, Elco's reliance on the prior ruling in its analysis was proper.

Finally, Plaintiff attempts to distinguish *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, by summarily stating that "the court dismissed a CERCLA claim where the plaintiff failed

entirely to allege that the defendant had released hazardous waste onto the property and, in fact, alleged that another party had done so. In contrast, Anthony Wayne has alleged all the elements of a CERCLA claim against Elco." [DE 35 at 12.] As previously discussed, Plaintiff does not even come close to alleging the prima facie elements of a CERCLA claim and its bald assertions otherwise do not change this fact.

In sum, Plaintiff's attempts to recast Elco's arguments to dismiss its Section 107 claim as imposing a "heightened standard" and its mischaracterizations of Elco's cited authority simply miss the mark. As such, Plaintiff's Section 107 claim must be dismissed.

### C.     Plaintiff has inadequately pled its Environmental Legal Action Claim.

Plaintiff spends just a few short sentences responding to Elco's arguments to dismiss its ELA claim again asserting that "there are no heightened pleading requirements for environmental claims" and simply stating that it has "alleged all of the elements of an ELA claim." [DE 35 at 12.] As noted above, Plaintiff's failure to substantively address Elco's arguments entitles Elco to a ruling in its favor.  [*See supra* at 2.] However, more importantly, Plaintiff's response should be rejected because, as demonstrated above, Elco is not asking the Court to apply a "heightened" standard. Rather, the general notice pleading standard requires the Plaintiff to do more than speculate that it has a cause of action. Despite its conclusory statements otherwise, Plaintiff has made no attempt to allege each element of an ELA claim and those allegations it does set forth are inadequate.

To prevail on its ELA claim Plaintiff must plead and prove that (1) Elco caused or contributed to a release of a hazardous substance or petroleum into the environment, (2) that poses a risk to human health and the environment. Plaintiff fails to allege the second element

anywhere in its Amended Complaint. Therefore, despite its assertion to the contrary, Plaintiff has failed to allege each element of an ELA claim.

Moreover, Plaintiff's allegations fall short of being adequate under the notice pleading standard. For example, Plaintiff does not allege what hazardous substances Elco used or released. Nor does it allege that Elco caused or contributed to a release. Rather, it merely alleges that the Defendants, collectively, "caused and/or contributed to the handling, storage, treatment, transportation, and/or disposal of hazardous substances" and that "[h]azardous substances and/or petroleum are present in the surface and subsurface soil and/or groundwater below the Site." These are conclusory statements that have no relevance to the elements of an ELA claim. Thus, Plaintiff's ELA claim is nothing more than an incomplete reiteration of the elements of an ELA claim and cannot survive this motion to dismiss.

### D.    The economic loss doctrine precludes recovery in tort when the losses constitute disappointed contractual expectations.

Plaintiff contends that Elco's economic loss argument "fails because...both Indiana courts and the Seventh Circuit have held that parties may pursue both contract and waste claims." [DE 35 at 8.]  Plaintiff cites *Bitler Inv. Venture II, LLC v. Marathon Petroleum Co. LP*, 741 F.3d 832 (7th Cir. 2014), to support this proposition. [*Id.* at 9.] Plaintiff fails to note, however, that *Bitler* neither analyzed nor mentioned the potential application of the economic loss doctrine when tort claims are brought to recover contractual damages.  Thus, *Bitler* is not controlling here.

Rather, Indiana courts have held that the economic loss doctrine bars recovery in tort when the losses constitute disappointed contractual or commercial expectations. A waste claim is a tort claim, and, therefore, the economic loss doctrine should be applied to it. *See Finley v. Chain*, 374 N.E.2d 67, 77 (Ind. Ct. App. 1978)[1] (characterizing plaintiff's waste claim as a tort);

---

[1] This case was overruled on other grounds by *Morris v. Weigle*, 383 N.E.2d 341 (Ind. 1978).

*see also Indianapolis-Marion Cnty P. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 730 (Ind. 2010) (explaining that the economic loss rule operates to preclude recovery *in tort* for economic loss). For example, Wisconsin courts have held that the economic loss doctrine precluded waste claims, and other tort claims, that sought recovery for solely economic losses. *See, e.g., Metal Processing Co., Inc. v. Amoco Oil Co.*, 926 F. Supp. 828, 832-33 (E.D. Wis. 1996) (holding that the economic loss doctrine applies to a real estate transaction involving allegedly contaminated property and precluding recovery under state law tort claims); *Mose v. Tedco Equities–Potter Road Ltd. P'ship*, 598 N.W.2d 594, 598-600 (Wis. Ct. App. 1999) (precluding waste claim). Wisconsin courts base this decision on the theory behind the economic loss doctrine, which is stated as follows:

> Commercial entities are capable of bargaining to allocate the risk of loss inherent in any commercial transaction.... Permitting parties to sue in tort when the deal goes awry rewrites the agreement by allowing a party to recoup a benefit that was not part of the bargain.

*Budgetel Inns, Inc. v. Micros Sys., Inc.*, 8 F. Supp. 2d 1137, 1141 (E.D. Wis. 1998) (quoting *Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227, 1230 (W.D. Wis. 1997)).

Plaintiff's waste claim is an afterthought added to the Amended Complaint when it removed the other tort claims and is merely duplicative of its breach of lease claim. Both claims are based on the same alleged conduct and both seek the same relief. For instance, in its breach of lease claim, Plaintiff alleges that "[t]he Defendants' conduct in failing to keep the building in good repair and working order, as well as the release or discharge and continued presence of hazardous substances constitute a material breach of the Parties' Agreements" and requests to recover damages "[a]s a direct and proximate result of Defendants' breaches of their contractual obligations." [DE 31 at ¶¶ 39-40.] Similarly, in its waste claim, Plaintiff alleges that Defendants

left the Site in a damaged condition because it permitted the continued presence of hazardous substances on the Site. [*Id.* at ¶ 44.]

The Lease clearly contemplated this scenario. Section 5 of the Lease provides that the tenant agrees to keep the property in "good repair and working order" and "in a clean, slightly and healthful condition" and to surrender the property at the end of the Lease "in as good repair and condition" as when the Lease began. [DE 31-3 at ¶¶ 5.01, 5.02.] Clearly all of the alleged conduct cited in support of Plaintiff's waste claim would be encompassed in this contractual language. *See Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003) ("The whole of the alleged wrong...centered on the performance required by the contract.... Any duty [the defendant] had to perform his individual duties flowed solely from the contract."); *Travelers Cas. & Sur. Co. of Am. v. Adecco USA, Inc.*, No. 2:12-CV-416, 2013 WL 4776771, at *7 (N.D. Ind. Sept. 5, 2013) ("Generally speaking, the economic loss rules holds that disputes involving only economic losses between parties in privity of contract should be resolved by contract law instead of tort law.").

Any obligation that Elco had to Plaintiff arose solely out of the Lease negotiated between the parties–the parties specifically chose to include these bargained-for expectations and obligations in the Lease. Therefore, alleged losses caused by Elco's alleged failure to keep the property in good repair and a healthful condition and to surrender the property at the end of the Lease in as a certain condition constitute nothing more than disappointed contractual expectations. As such, the economic loss doctrine precludes Plaintiff's waste claim.

**E.    The Assignment and Novation among Plaintiff, Elco and Tinnerman preclude Plaintiff's claims against Elco.**

**1.    The pleadings show the Effective Date to be no later than April 11, 2006.**

Plaintiff contends that "[t]he last element of a novation, the extinguishment of the old contract by the new contract, is not established by the pleadings in this case" because the effective date of the novation is unknown. [DE 35 at 4.] The Plaintiff agrees that the Effective Date applicable to the novation is "that date, if any, on which the closing of the transactions contemplated by the Asset Purchase Agreement [between Elco and Tinnerman] is consummated." [*Id.*] While the Plaintiff has avoided directly alleging the precise Effective Date of the Assignment in its Amended Complaint, the attachments to that complaint demonstrate that the Effective Date was most likely in October 2005, but certainly no later than April 11, 2006. This means that the novation was effective long before the Plaintiff's claims accrued.

The Assignment specifies that the Asset Purchase Agreement ("APA") was dated October 17, 2005. [DE 31-5.] The Amended Complaint also expressly states that Plaintiff entered into the Assignment in October 2005. [DE 31 at ¶ 14.] And the Assignment was to occur simultaneously with the closing of APA transaction. [DE 31-5.] Thus, because Plaintiff specified that it entered into the Assignment in October 2005, the closing on the APA, which was to be simultaneous with the Assignment, obviously occurred in October 2005 as well.

However, even if the Court does not believe the pleadings establish an October 2005 Effective Date, they do establish that the Effective Date was no later than April 11, 2006. [DE 31-6.] An Extension of Real Estate Lease provides the following:

> This Extension of Lease, is made this 11th day of April, 2006, between Anthony Wayne Corporation, an Indiana Corporation ("Landlord") and Tinnerman Palnut, Inc., a Delaware Corporation ("Tenant"), formerly known as Elco Textron Inc. and Elco Industries.

12

[*Id.*] Tinnerman would not be referred to as the "Tenant" in this document if the transaction contemplated by the APA had not closed. Nor would Tinnerman be referred to as "formerly known as Elco Textron Inc. and Elco Industries." Thus, the pleadings establish the novation occurred no later than April 11, 2006.

### 2.    Plaintiff misconstrues Elco's argument in an attempt to create confusion and ambiguity.

Plaintiff argues that "[t]he two provisions in the Assignment upon which Elco relies to argue that there was a novation are ambiguous as to the scope of the novation[;]" and, therefore, "the interpretation of these provisions must be performed by the jury through extrinsic evidence." [DE 35 at 5.]  Plaintiff is misstating Elco's argument to create ambiguity that does not exist.  The Assignment contains two provisions that are relevant to the issue.

Section 2(b) provides that Tinnerman "assumes all of the liabilities and obligations of [Elco] under the Lease, as amended hereby, arising or accruing on or after the Effective Date." [DE 31-5 at ¶ 2(b).] As explained in Elco's initial brief, this indemnification provision provides that Tinnerman is now responsible for two types of liabilities: (1) those that *arose* on or after the Effective Date; and (2) those that *accrued* on or after the Effective Date. The first category pertains to those liabilities that "occur" or "exist" on or after that date. *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/arise (last visited Jun. 25, 2014) (stating definition of "arise" as "to begin to occur or to exist"). The second category pertains to liabilities that the Plaintiff did not discover until on or after the Effective Date. *See Strauser v. Westfield Ins. Co.*, 827 N.E.2d 1181, 1185 (Ind. Ct. App. 2005) (defining a date of accrual as the date when the plaintiff knew or in the exercise of ordinary diligence should have known the harm occurred). Thus, the Assignment includes all claims that arose after the Effective Date and those

that may have existed before the Effective Date but did not accrue until after that date. Accordingly, the Assignment provided complete protection to Elco for any liability under the Lease and expressly assigned all potential liability to Tinnerman. Indeed, Plaintiff was well aware of the extent of this Assignment and even consented to it with full knowledge of the implications. [DE 31-5] at ¶ 3 ("Landlord hereby...consents to the assignment effected hereby...").]

The second provision, Section 3, provides that Plaintiff "grants [Elco] a novation with respect to all liabilities and obligations under the Lease occurring on or after the Effective Date." [*Id.* at ¶ 3.] This clause substitutes Tinnerman for Elco as a party to the Lease and makes Tinnerman directly liable to Plaintiff for all liabilities coming into existence on or after the Effective Date. *See* Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/occur (last visited Jun. 25, 2014) (stating definition of "occur" as "to come into existence").

As a result of the Assignment, Plaintiff consented to Tinnerman assuming all liabilities under the Lease not yet known, consented to making Tinnerman directly liable to it for those liabilities not yet in existence and, thus, acknowledged that Tinnerman would be on the hook for both categories of liabilities.[2]   As such, there is no ambiguity.  "[T]he issue of novation presents an issue of fact only if the agreement is equivocal or uncertain; when the agreement is unequivocal, the existence of a novation is a question of law." *Boswell v. Lyon*, 401 N.E.2d 735, 741 (Ind. Ct. App. 1980) (citing 58 Am. Jur. 2d, *Novation*, § 20).  Thus, the court should decide as a matter of law that all of Elco's liabilities arising from the Lease alleged in the Amended Complaint are precluded by the novation.

---

[2] Another noteworthy point is that Plaintiff later consented to Tinnerman's assignment of the lease to A. Raymond Tinnerman Manufacturing, Inc. [DE 31-7.] However, this time, Plaintiff specifically noted that its consent did not constitute Plaintiff's approval of any of the assignment's provisions, that the assignee and Plaintiff were not contractually bound, and that Plaintiff is not a party to the assignment.  (*Id.*)  None of this language is contained within the October 17, 2005 Assignment to which Plaintiff, Elco, and Tinnerman are all parties.

      **3.**      **Plaintiff has admitted that there was no existing default by Elco as of October 19, 2009.**

The October 19, 2009 "Consent of Landlord" shows that Plaintiff had no knowledge as of this date that any covenants and/or conditions of the Lease had been breached. [DE 31-7 at ¶ 5(c).] Specifically, the document states:

> To Landlord's knowledge, there is no existing default by Assignor in the compliance, performance and observance of the covenants and conditions of the Lease to be performed or observed on the part of Assignor.

[*Id.*] Plaintiff argues that this "Consent of Landlord memorialized [Plaintiff's] consent to an assignment of the lease for the Property that was held by Tinnerman Palnut to A. Raymond Tinnerman Manufacturing, Inc." and that it shows that Plaintiff "did not have any knowledge of an existing default by *Tinnerman Palnut*[,]" not Elco. [DE 35 at 8 (original emphasis).] Interestingly, the Consent of Landlord also states:

> WHEREAS, Landlord entered into that certain Real Estate Lease with Tinnerman Palnut, Inc. (as successor in interest to Elco Industries, "Assignor") executed by Landlord on June 22, 1995, and by Assignor on July 10, 1995, as amended by that certain Extension of Real Estate Lease executed by Landlord and Assignor on August 26, 2002, as further amended by that certain Extension of Real Estate Lease dated April 11, 2006, for the property described therein (the "Lease")[.]

[DE 31-7 at 1.] This paragraph defines "Assignor" as Tinnerman, the successor in interest to Elco, and refers to the Lease and extensions between Plaintiff and Elco. As such, Plaintiff cannot argue that the aforementioned statement only applied to Tinnerman. Therefore, it is reasonable to conclude that there was no existing or accrued liability as of October 19, 2009.

**III.**    **Conclusion.**

For the aforementioned reasons, Plaintiff's Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

*s/ Frank J. Deveau*
Frank J. Deveau, Atty. No. 4692-49
Michael D. Chambers, Atty. No. 21573-06
Melissa A. Gardner, Atty. No. 29920-49
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Phone: (317) 713-3500
Fax: (317) 713-3699

*Attorneys for Defendant Elco Textron, Inc.*
*and Defendant Elco Industries, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*s/ Frank J. Deveau*

2149383.1