UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| **ANTHONY WAYNE** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 3:13CV1406-PPS/CAN** |
| | ) | |
| **ELCO INDUSTRIES, INC.,** | ) | |
| **ELCO TEXTRON, INC.,** | ) | |
| **(f/k/a Elco Industries),** | ) | |
| **TINNERMAN PALNUT, INC. and** | ) | |
| **A. RAYMOND TINNERMAN** | ) | |
| **MANUFACTURING, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Anthony Wayne Corporation owns property in Logansport which it has leased over the years to a series of manufacturing companies.  Since 1972, the series of lessees (in chronological order) has included defendants Elco Industries, Inc., Elco Textron, Inc., Tinnerman Palnut, Inc. and A. Raymond Tinnerman Manufacturing, Inc.  Wayne brought this case after learning that the property's soil and groundwater are contaminated, requiring environmental cleanup, and that the building on the property is in a deteriorated condition with repairs estimated in excess of $660,000.  Wayne's first amended complaint asserts claims for clean-up costs under the Indiana Environmental Legal Actions (ELA) statute (Count I) and under the federal Comprehensive Environmental Response, Compensation and Liability Act (Count II), as well as

additional claims under Indiana law for breach of contract (Count III) and for waste (Count IV). The Elco defendants move to dismiss arguing that the amended complaint fails to state a claim upon which relief can be granted.

## Motion to Dismiss Standards

The Supreme Court has held that: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Construing this standard, the Seventh Circuit advises that: "[i]n reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. Oct. 20, 2011). In sum, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). And "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley*, 671 F.3d at 616, quoting *Twombly*, 550 U.S. at 557.

## Novation

Elco's first and over-arching argument is that Wayne released the Elco defendants from any future liability arising from their lease of the property when, back in October 2005, Wayne agreed to the assignment of the lease to another defendant,

2

Tinnerman Palnut.  This was a novation, according to Elco, meaning that "[e]very alleged liability contained in Plaintiff's Amended Complaint was assumed by Tinnerman Palnut and released as to Elco Industries."  [DE 34 at 2.] Here is the operative language from the 2005 lease assignment:

> Consent to Assignment and Novation.  Effective as of the Effective Date, Landlord hereby (a) consents to the assignment effected hereby, (b) agrees to recognize Assignee as the Tenant under the Lease and thereby establish direct privity of contract with Assignee; and (c) grants Assignor a novation with respect to all liabilities and obligations under the Lease occurring on or after the Effective Date.

Exh. E to Amended Complaint, DE 31-5 at 3.  Elco contends that any liability for breach of the lease by failure to maintain the property, and for environmental contamination or clean-up costs, occurred on or after this 2005 novation, and therefore does not lie with Elco.  Elco also cites Indiana's statute and case law for the proposition that a novation is effective against liability under ELA or CERCLA. [DE 34 at 11.]

Not so fast, says Wayne. Given the procedural posture of the case – before me on a motion to dismiss – Wayne says that it must prevail because the pleadings don't establish "when a novation occurred."  [DE 35 at 3.] Wayne says that the pleadings are insufficient to demonstrate the "Effective Date" of the novation, and absent that information, the novation can't be relied upon to obtain a dismissal.  Section 1 of the Assignment defined the Effective Date as the date "on which the closing of the transactions contemplated by the Asset Purchase Agreement is consummated."  [DE 31-5 at 2.]  The Assignment refers to "that certain Asset Purchase Agreement...dated

3

October 17, 2005 by and between" Elco Textron, Tinnerman Palnut and two other

Textron entities.  [*Id.*]

Wayne doesn't debate that a novation *did* occur, but just argues that Elco can't

win with this argument unless the pleadings demonstrate *when* it occurred.  In its

amended complaint, Wayne asserts that it "entered into (this) assignment and

assumption of Lease Agreement" in October 2005.  [DE 31 at ¶14.]  For purposes of this

motion to dismiss, Wayne's own pleading is enough to charge Wayne with entering

into the novation in October 2005.   But for reasons I will talk about in a moment,

knowing the exact Effective Date of the novation is not critical to my analysis at this

stage of the case.

Wayne also argues that "the scope of the novation is an issue of fact that the jury

must determine."  [DE 35 at 4.]  Wayne's rationale for this is that an ambiguity arises

from conflicting language in "the two provisions in the Assignment upon which Elco

relies to argue that there was a novation," rendering the Assignment "ambiguous as to

the scope of the novation."  *Id*.  Wayne therefore concludes that a jury must ultimately

interpret the provisions through the use of extrinsic evidence.  The ambiguity Wayne

identifies is said to arise from a difference in the terminology used in Section 2(b) of the

Assignment, describing Tinnerman Palnut's assumption of liabilities and obligations,

and that used in Section 3, describing the novation granted by Wayne to Elco.  Section

2(b) refers to "liabilities and obligations...**arising or accruing** on or after the Effective

Date," whereas Section 3 speaks of "liabilities and obligations...**occurring** on or after the

4

Effective Date." [DE 31-5 at 2, 3.] Elco cites an Indiana Court of Appeals decision that says although in most cases contract interpretation is a question of law for the court, where "a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the fact finder." *F.E. Gates Co., Div. of Blakley Corp. v. Hydro-Technologies, Inc.*, 722 N.E.2d 898, 903 (Ind.App. 2000).

Elco's reasoning skips several steps here, even assuming that there is a real ambiguity. First I have to interpret the contract to "ascertain the intent of the parties" and to determine whether there exists a real ambiguity. *McLinden v. Coco*, 765 N.E.2d 606, 611 (Ind.App. 2002). In so doing, I "must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes the provisions to be conflicting." *Bank of America, N.A. v. Ping*, 879 N.E.2d 665, 669 (Ind.App. 2008). Even where I find an ambiguity, extrinsic evidence and a jury determination are not always needed. Where "the ambiguity arises because of the language used in the contract and not because of extrinsic facts then its construction is purely a question of law to be determined by the trial court." *First Federal Savings Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 605 (Ind. 1990).

I am not persuaded that the difference in terminology ("arising or accruing" versus "occurring") constitutes an ambiguity as to the scope of the novation granted to Elco. There may (or may not) be a substantive difference in the verbs, but they appear in different contexts defining different contractual terms. As I said before, Section 2 defines what liabilities and obligations Assignee Tinnerman Palnut takes on by

5

accepting the Assignment.  Section 3 defines the impact of the Assignment on Elco as the Assignor, namely the granting of a novation.  If there is any real difference in the language distinction, it is a difference between the scope of Tinnerman Palnut's assumption of liabilities and obligations as the new Assignee, and the scope of Wayne's release from liabilities and obligations as Assignor.  I find no ambiguity in the terms of Section 3 that would prevent me from determining whether the novation applies to support dismissal of Wayne's claims against Elco under the motion to dismiss standard.

Elco tells me that Wayne's claims for breach of the lease based on the deterioration of the property did not accrue until January 2013 when Wayne alleges it inspected the property and found it in terrible shape.  Similarly, Elco maintains that any environmental liability "did not accrue or arise until at the earliest March 7, 2013," when Wayne received a Phase I Environmental Site Assessment.  As a result, Elco says Wayne's claims could only give rise to liability that occurred after the Effective Date of the October 2005 novation.  But Elco fails to offer a legal analysis of when liabilities "occur" (the operative term in Section 3's treatment of the novation).  Elco's argument that liability for the condition of the property only "occurred" when Wayne discovered the deterioration in January 2013 and the contamination in March 2013 strikes me as particularly specious.  In my way of thinking, the liability for the condition of the property "occurred" when it happened, i.e when the mess was created.

Trying a different tack, Elco also contends that by a later assignment of the lease, Wayne effectively conceded that no liability had arisen by that time.  Elco points to

Wayne's October 19, 2009 consent to the further assignment of the lease from

Tinnerman Palnut to A. Raymond Tinnerman Manufacturing Inc.  In Section 5(c) of that

Consent of Landlord document, Wayne certified that to its knowledge, "there is no

existing default by Assignor in the compliance, performance and observance of the

covenants and conditions of the Lease to be performed or observed on the part of

Assignor."  Exhibit G to Amended Complaint, DE 31-7 at 3.  Elco suggests that this

acknowledgment precludes any assertion by Wayne that any defaults or liabilities

under the Lease existed at that time (in October 2009), so that no liabilities persisting to

the present could have accrued prior to the October 2005 novation and so have been

retained by Elco.

This argument doesn't hold up; the plain language of the provision does not

support Elco's interpretation.  Elco was not a party to that 2009 assignment involving

Wayne as Landlord, Tinnerman Palnut as Assignor, and A. Raymond Tinnerman

Manufacturing as Assignee.  I agree with Wayne that the 2009 disclaimer language from

the Tinnerman transfer of the Lease — "To Landlord's knowledge, there is no existing

default by Assignor" — refers only to *then-known* breaches of the Lease *by Tinnerman*

*Palnut*, and does not signify any agreement that there were no pre-existing (but

persisting) defaults potentially attributable to Elco.

It is entirely plausible that the condition of the property on which the claims are

based could have occurred long enough ago to pre-date the effective date of the

novation.   That is a matter that needs to be fleshed out through the discovery process

7

and trial. At this stage point in time, it cannot be conclusively determined that the liabilities Wayne asserts in this case must have "occurr[ed] on or after the Effective Date" of the novation, so as to be within the scope of the novation.  While a renewed look at the impact of the novation may well be appropriate at the summary judgment stage of the case, dismissal at this point would be ill-advised.

## Economic Loss Doctrine

Count IV of Wayne's first amended complaint alleges that the defendants are liable under the common law doctrine of waste for the damaged condition of the property.  This relatively obscure cause of action is described by the Indiana Court of Appeals this way:  "At common law, the owner or a person with an interest in real property may bring an action for waste for the destruction, misuse, alteration or neglect of the premises by one lawfully in possession of the premises." *Wright Motors, Inc. v. Marathon Oil Co.*, 631 N.E.2d 923, 927 (Ind.App. 1994).

Elco argues that the claim is barred by the economic loss doctrine.  Where parties have "allocated their respective risks, duties, and remedies" by way of a contract governing their relationship, the economic loss doctrine sometimes provides that the contract, and not tort law, is the exclusive source of legal claims by one party against the other.  *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 725 (Ind. 2010).

In response, Wayne cites cases in which courts have permitted claims for waste even in the presence of a lease between the parties.  Most recently the Seventh Circuit in

8

*Bitler Investment Venture II, LLC v. Marathon Petroleum Company LP*, 741 F.3d 823 (7th Cir. 2014), held that parties "can, if they want, contract around the law of waste – in effect negotiate their own private law of waste and enforce it under contract law rather than property law." *Id.* at 837. But in *Bitler*, as in this case, "the parties didn't do that – didn't by contract exclude waste remedies – perhaps realizing that the law of waste can continue to play a useful role even when the parties have a detailed contract." *Id.* The Court thus concluded that "the landlord can still have an action for waste unless the parties are found to have intended the lease to be the exclusive source of their rights." *Id.*

Elco's attempt to distinguish *Bitler* because it doesn't reference the economic loss doctrine is unpersuasive. The Court's analysis of the availability of the potentially overlapping remedies in tort and property did not yield the conclusion that waste should be precluded. In the absence of an Indiana case applying the economic loss doctrine to defeat a claim of waste between parties to a real estate lease, or otherwise at odds with *Bitler*, I will not dismiss Wayne's waste claim as barred by the economic loss doctrine.

## Adequacy of CERCLA and ELA Pleading

Count I of Wayne's amended complaint is brought under the Indiana Environmental Legal Actions Statute, which authorizes a claim against a person who "caused or contributed to the release" of "a hazardous substances or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the

environment."  Indiana Code §13-30-9-2.  Count I simply alleges that all the defendants are liable under the ELA because they "contributed to the handling, storage, treatment, transportation, and/or disposal of hazardous substances," and "hazardous substances and/or petroleum are present in the surface and subsurface soil and/or groundwater below the Site."  [DE 31 at ¶26.]  Even a generous construction of this skeletal and conclusory pleading does not include any allegations that *there was a release* of hazardous substances or petroleum into the ground, that defendants (particularly Elco) *caused or contributed to* that release, the hazardous substances or petroleum *pose a risk* to human health and the environment, or even *what the hazardous substance is*.  None of the background allegations of the first amended complaint, incorporated by reference within Count I, provide any of this detail either.

Applying the Rule 12(b)(6) standard as laid above, I have to conclude that Count I contains "conclusory allegations merely reciting [some] elements of the claim," rather than adequate well-pleaded facts so as to meet the *Iqbal* plausibility standard. *McCauley*, 671 F.3d at 616.  Wayne's allegations under ELA don't tell "a story that holds together" with enough details to suggest that all of the elements of an ELA claim are met.  *Swanson*, 614 F.3d at 404.  I don't reach this conclusion because I'm applying a heightened pleading standard.  The allegations of Count I are simply too threadbare under the ordinary notice pleading standard of Rule 12(b)(6).

Count II contains Wayne's claim under CERCLA, invoking both §107(a) and §113(f)(1).[1] Section 107(a) provides an implied cause of action for recovery of response costs incurred in dealing with a release or threatened release of a hazardous substance. Section 113(f)(1) provides claims for contribution against other potentially liable parties, authorizing courts to allocate response costs among various parties liable for the release of a hazardous substance.  Wayne does not dispute Elco's argument that Wayne cannot bring its contribution claim at this time, because §113(f)(1) claims can only be asserted "during or following any civil action under" §106 or §107(a).  In other words, where Wayne has not itself been sued for clean-up costs, it cannot seek contribution from another potentially responsible party.  *See Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 166 (2004); *NCR Corp. v. George A. Whiting Paper Co.*, ___ F.3d ___, 2014 WL 4755491, *5 (7th Cir. Sept. 25, 2014).  *Bernstein v. Bankert*, 733 F.3d 190, 201 (7th Cir. 2013). Wayne's claim under §113(f)(1) is therefore subject to dismissal without prejudice.

To succeed with a cost recovery claim under §107(a), a plaintiff who has responded to a hazardous substance release must prove four elements:  "(1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a 'responsible person' for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs."  *Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992).  *See also Emergency Services Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 463 (7th Cir. 2012).   The statute also

---

[1] These are 42 U.S.C. §9607(a) and §9613(f)(1), respectively.

permits recovery of costs incurred in responding to a threatened, rather than actual, release of hazardous substances.  *United States v. P.H. Glatfelter Co.*, ___ F.3d ___, 2014 WL 4755483, *9 (7th Cir.  Sept. 25, 2014).

The same two factual allegations are made in support of Wayne's CERCLA claim in Count II as are made in support of its ELA claim in Count I.   As I noted earlier, these allegations omit any assertion that there was a release of the unidentified hazardous substance or that Elco and the other defendants caused or contributed to that release.  Neither is a threatened release alleged.  Also absent is any allegation that Wayne has incurred any response costs in dealing with the release or threatened release.  The lack of factual allegations plausibly supporting all the elements of the CERCLA §107(a) claim warrant its dismissal.

This is not an overly strict reading of the Rule 12(b)(6) pleading minimum.  For instance, I don't suggest that the facts alleged concerning the site and the defendants' operation of the site are inadequate to plausibly support the first two elements of the claim (that the site is a CERCLA "facility" and that the defendants are responsible persons under CERCLA).  But gaps are gaps, and some cannot be bridged by inferences which are not supported by what is actually alleged.  "A complaint must do more than leave open the possibility that the plaintiff might later plead some set of undisclosed facts that would warrant relief."  *Bartley v. Wisc. Dept. of Corrections*, 258 Fed.Appx. 1, 2007 WL 4328666  at *3 (7th Cir. 2007).  I conclude that Count II of Wayne's amended complaint fails to state a claim on which relief could be granted under either §107(a) or

§113(f)(1) of CERCLA. Wayne will however be given an opportunity to amend the complaint in an attempt to replead Counts I and II.

## Conclusion

Elco's motion to dismiss will be granted as to the ELA and CERCLA claims in Counts I and II, which will be dismissed for failure to state a claim.  The motion will be denied as to the breach of contract claim in Count III and the claim for waste in Count IV.  Elco does not at present demonstrate that the novation it received defeats its liability on any of the claims Wayne has pled, or that the economic loss doctrine precludes Wayne's claim for waste of the real property.

**ACCORDINGLY**:

Defendants Elco Industries, Inc. and Elco Textron, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint [DE 33] is granted in part and denied in part.

Counts I and II of the amended complaint are dismissed without prejudice for failure to state a claim upon which relief can be granted.  Plaintiff Anthony Wayne Corporation will have 30 days to file an amended complaint in an attempt to replead Counts I and II should it choose to do so.

Defendant Elco Industries, Inc. and Elco Textron, Inc.'s earlier-filed Motion to Dismiss [DE 21], directed to the original complaint, is denied as moot.

**SO ORDERED.**

ENTERED: October 17, 2014.

_____/s/ Philip P. Simon_____
PHILIP P. SIMON, CHIEF JUDGE